Christopher J. Rillo (SBN 112009)
christopher.rillo@bakerbotts.com
Raerani Reddy (SBN 340475)
rani.reddy@bakerbotts.com
BAKER BOTTS L.L.P.
101 California Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 291-6200
Facsimile: (415) 291-6300

Kevin Sadler (SBN 283765)
kevin.sadler@bakerbotts.com
BAKER BOTTS L.L.P.
1001 Page Mill Road, Suite 200
Palo Alto, CA 94304
Telephone: (650) 739-7500
Facsimile: (650) 739-7699

Counsel for Sunnova Energy Corp.

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

JOSE MARTINEZ, individually and on behalf of others similarly situated,

Plaintiff,

v.

SUNNOVA ENERGY CORP., a corporation; and DOES 1 through 10, inclusive,

Defendants.

Case No.: 2:24-cv-06346-MRA-MAR

**DEFENDANT SUNNOVA ENERGY CORP.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

Date: October 3, 2024
Time: 1:30 p.m.
Courtroom: 10B
Judge: Mónica Ramírez Almadani

## TABLE OF CONTENTS


Page

I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

III. ARGUMENT .......... 3

A. The "Preponderance of the Evidence" Standard Applies and is Easily Satisfied. .......... 4

B. Because Plaintiff's Allegations Put an Amount in Controversy Exceeding $75,000, this Court has Jurisdiction Over This Matter. .......... 5

C. Plaintiff's Allegations of Meal and Rest Violations Conservatively Puts $52,266.12 in Controversy. .......... 7

1. The Complaint Alleges a 100% Violation Rate of Meal and Rest Period Violations. .......... 8

2. Plaintiff's New 19% Violation Rate in his Motion is Disingenuous and Contradicts his Complaint. .......... 9

3. The Complaint Puts at least $52,266.12 in Controversy for Meal and Rest Penalties. .......... 10

D. Plaintiff's Allegations of Unpaid Overtime Conservatively Support a Potential Recovery of $9,146.57. .......... 11

1. Plaintiff's Overtime Claims add at least $9,146.57 to the Amount in Controversy. .......... 12

E. Plaintiff's Allegations of Wages Not Timely Paid Conservatively Puts $33,408.85 in Controversy. .......... 13

1. Plaintiff's Allegations of Final Wages Not Timely Paid Conservatively Adds $11,880.00 to the Amount in Controversy. .......... 13

2. Plaintiff's Allegations of Failure to Pay Wages Under Sections 204 and 210 Conservatively Places an Additional $21,528.85 in Controversy. .......... 14

a. It is reasonable to assume maximum penalties for Sections 204 and 210. .......... 14

b. Plaintiff's claims under sections 204 and 210 for wages not timely paid during employment put an additional $21,528.85 in controversy. .......... 15

F. Plaintiff's Allegations of Inaccurate Wage Statements Puts $4,000.00 in Controversy. .......... 16

G. Plaintiff's Allegations Under Cal. Labor Code §§ 2800, 2802, 1194, 1197,

and 1197.1 and the California UCL Also Increase the Amount in Controversy. ........ 16

1. Plaintiff's Allegations Under Cal. Labor Code §§ 2800 and 2802 Increase the Amount in Controversy. ........ 17

2. Plaintiff's Allegations Under Cal. Business & Professions Code §§ 17200, *et seq*. Increase the Amount in Controversy. ........ 17

3. Plaintiff's Minimum Wage Allegations Increase the Amount in Controversy. ........ 18

H. Plaintiff's Request for Statutory Attorney's Fees Conservatively Puts an Additional $32,937.22 in Controversy. ........ 18

I. The Overall Amount in Controversy Clearly Exceeds The Jurisdictional Minimum. ........ 19

IV. CONCLUSION ........ 21

# TABLE OF AUTHORITIES


**CASES** **PAGE(S)**

*Alvarado v. Dart Container Corp. of California*,
4 Cal. 5th 542 (2018) .......... 10

*Alvarez v. Off. Depot, Inc.*,
2017 WL 5952181 (C.D. Cal. Nov. 30, 2017) .......... 8, 10

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015) .......... 19

*BEM I, L.L.C. v. Anthropologie, Inc.*,
301 F.3d 548 (7th Cir. 2002) .......... 17

*Benitez v. Hyatt Corp.*,
2024 WL 1401712 (S.D. Cal. Mar. 21, 2024) .......... 13

*Bonetti v. TriStruX LLC*,
2024 WL 3225905 (N.D. Cal. June 27, 2024) .......... 10

*Caterpillar, Inc. v. Williams*,
482 U.S. 386 (1987) .......... 8

*Cocroft v. EQUIPMENTSHARE.COM Inc.*,
2024 WL 3877274 (S.D. Cal. Aug. 19, 2024) .......... 13

*Coleman v. Estes Express Lines, Inc.*,
730 F. Supp. 2d 1141 (C.D. Cal. 2010), aff'd sub nom, *Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011) .......... 7, 8

*Cram v. Electronic Data Systs. Corp.*,
2008 WL 115438 (S.D. Cal. January 8, 2008) .......... 4

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
S. Ct. 547 (2014) .......... 4

*Duberry v. J. Crew Grp., Inc.*,
2015 WL 4575018 (C.D. Cal. July 28, 2015) .......... 8

*Evers v. La-Z-Boy Inc.*,
2022 WL 2966301 (S.D. Cal. July 27, 2022) .......... 5, 10

*Galt GIS v. JSS Scandinavia*,
142 F.3d 1150 (9th Cir. 1998) ........ 3

*Gibson v. Chrysler Corp.*,
261 F.3d 927 (9th Cir. 2001) ........ 19

*Greene v. Harley-Davidson, Inc.*,
965 F.3d 767 (9th Cir. 2020) ........ 16

*Guglielmino v. McKee Foods Corp.*,
506 F.3d 696 (9th Cir. 2007) ........ 4

*Gutierrez v. Stericycle, Inc.*,
2017 WL 599412 (C.D. Cal. Feb. 14, 2017) ........ 5, 16

*Harris v. KM Indus., Inc.*,
980 F.3d 694 (9th Cir. 2020) ........ 4, 5

*Ibarra v. Manheim Invs., Inc.*,
775 F.3d 1193 (9th Cir. 2015) ........ 5

*In re Bluetooth Headset Prod. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ........ 18

*Jacobs v. Cal. State Auto. Ass'n Inter–Ins. Bureau*,
2009 WL 3562871 (N.D. Cal. Oct. 27, 2009) ........ 19

*Jasso v. Money Market Express, Inc.*,
2012 WL 699465 (N.D. Cal., Mar. 1, 2012) ........ 4

*Jauregui v. Roadrunner Transportation Servs., Inc.*,
28 F.4th 989 (9th Cir. 2022) ........ 14

*Korn v. Polo Ralph Lauren Corp.*,
536 F. Supp. 2d 1199 (E.D. Cal. 2008) ........ 4

*LaCross v. Knight Transp. Inc.*,
775 F.3d 1200 (9th Cir. 2015) ........ 4, 5

*Lara v. Trimac Transp. Servs. (Western), Inc.*,
2010 WL 3119366 (C.D. Cal. Aug. 6, 2010) ........ 5

*Lewis v. Verizon Commc'ns, Inc.*,
627 F.3d 395 (9th Cir. 2010) ........ 4

*Lopez v. Aerotek, Inc.*,
2015 WL 2342558 (C.D. Cal. May 14, 2015) ........ 8

*Mamika v. Barca*,
68 Cal.App.4th 487 (1998) ........ 13

*Martinez v. Sunnova Energy Corporation, et al.*,
Case No. 24STCV16061 (Los Angeles Superior Court filed June 26, 2024) ........ 2, 6, 7, 8, 9, 11, 12, 13, 14, 15, 16, 17

*Mayorga v. Evans Food Grp. Ltd.*,
2024 WL 4003514 (C.D. Cal. Aug. 30, 2024) ........ 14, 17

*Morgan v. Rohr, Inc.*,
2023 WL 8811816 (S.D. Cal. Dec. 20, 2023) ........ 10

*Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*,
2019 WL 7987117 (C.D. Cal. June 21, 2019) ........ 13

*Rea v. Michaels Stores Inc.*,
742 F.3d 1234 (9th Cir. 2014) ........ 4

*Roth v. Comerica Bank*,
799 F. Supp. 2d 1107 (C.D. Cal. 2010) ........ 4, 6

*Sanchez v. Monumental Life Ins. Co.*,
102 F.3d 398 (9th Cir. 1996) ........ 4

*Sanchez v. Russell Sigler, Inc.*,
2015 WL 12765359 (C.D. Cal. Apr. 28, 2015) ........ 8

*Stevenson v. Dollar Tree Stores, Inc.*,
2011 WL 4928753 (E.D. Cal. 2011) ........ 8

*Vasquez v. Coast Valley Roofing, Inc.*,
266 F.R.D. 482 (E.D. Cal. 2010) ........ 18

*Willner v. Manpower Inc.*,
2015 WL 3863625 (N.D. Cal. June 20, 2015) ........ 19

**STATUTES**

28 U.S.C. §§ 1332 ........ 2, 4

28 U.S.C. §§ 1441 et seq ........ 2

Cal. Business & Professions Code §§ 17200, *et seq*. ..........................2, 3, 17, 20, 21

Cal. Labor Code § 201 .....................................................................2, 20, 14, 16, 19

Cal. Labor Code § 202 .....................................................................2, 13, 14, 19, 20

Cal. Labor Code § 203 .....................................................................2, 13, 14, 19, 20

Cal. Labor Code § 204 .................................................................2, 4, 13, 14, 15, 20

Cal. Labor Code § 210 .....................................................................2, 13, 14, 15, 20

Cal. Labor Code § 226 ..................................................................................2, 16, 20

Cal. Labor Code § 226.7 ...............................................................................2, 10, 19

Cal. Labor Code § 510 ........................................................................................2, 20

Cal. Labor Code § 512 ........................................................................................2, 19

Cal. Labor Code § 1194 ...............................................................2, 3, 16, 18, 20, 21

Cal. Labor Code § 1197 .................................................................2, 3, 6, 16, 20, 21

Cal. Labor Code § 1197.1 .....................................................................2, 3, 16, 20, 21

Cal. Labor Code § 2800 .......................................................................2, 3, 16, 17, 20

Cal. Labor Code § 2802 ...............................................................2, 3, 16, 17, 20, 21

Class Action Fairness Act (CAFA) ...........................................................................2

## I. INTRODUCTION

On July 26, 2024, Defendant Sunnova Energy Corporation ("Sunnova") timely and properly removed this action to federal court based on diversity jurisdiction.[1] Plaintiff Jose Martinez ("Plaintiff") now seeks to remand this action based solely on calculations of the amount in controversy that are wholly at odds with the allegations in his Complaint. Plaintiff's arguments have no merit and are based on fundamental misrepresentations of the law and his pleadings.

The primary evidence in any assessment of the amount in controversy is Plaintiff's Complaint, which here explicitly alleges routine, daily, and willful violations of wage and hour laws across ten causes of action.[2] The Complaint is rife with allegations that these violations were the result of a willful and established scheme embedded in Sunnova's practices and management, that, at all relevant times, forced Plaintiff to be on duty throughout his daily meal and rest breaks, cheated him out of his overtime pay at least twice a day, and created inaccurate timekeeping systems and records. Based on well-established precedent and a logical interpretation of Plaintiff's allegations, combined with typical attorney's fees informed by similar actions, there is clearly a minimum of at least $131,758.76 in controversy in this action for Plaintiff alone—almost double the jurisdictional minimum.

Yet in his Motion, Plaintiff disingenuously attempts to reduce the amount in controversy by relying on unreasonable assumptions. Plaintiff's differing

---

[1] Plaintiff does not contest diversity between the parties. *See* Dkt. No. 1 (Notice of Removal ("Notice" or "NOR")) at ¶ 6; *see generally*, Dkt. No. 10 (Motion to Remand ("Motion" or "MTR")).

[2] Sunnova disputes that it has committed any of the labor violations alleged in Plaintiff's Complaint and maintains that it has no liability to Plaintiff. For purposes of removal and calculating the amount in controversy, however, Sunnova must look to Plaintiff's Complaint, which gives rise to an inference that Plaintiff is alleging a 100% violation rate of the wage and hour laws at issue. In his Motion to Remand, Plaintiff overlooks many of his pleaded claims that if proven would give rise to monetary penalties and has undercalculated the attorney's fees that must be attributed to him for purposes of the amount in controversy. Sunnova's correction of these failings is meant to elucidate the amount in controversy under the preponderance of the evidence standard and is not an admission of any liability.

calculations—put forth for the first time in the instant motion and that Plaintiff failed to discuss as required during meet and confer—are unsupported by evidence, in direct contradiction to his own Complaint, and incorrect. Sunnova denies any liability to Plaintiff on any of his claims, but the only reasonable reading of Plaintiff's Complaint and prayer for relief supports a finding that that the amount in controversy exceeds $75,000. For these reasons and those following, Sunnova respectfully requests that this Court deny Plaintiff's Motion to Remand.

## II. BACKGROUND

Plaintiff filed this putative wage and hour class action in Los Angeles Superior Court on June 26, 2024, alleging violations of: (1) Cal. Labor Code §§ 510, 1194, and 1198 (Unpaid Overtime); (2) Cal. Labor Code §§ 226.7 and 512(a) (Unpaid Meal Periods); (3) Cal. Labor Code § 226.7 (Unpaid Rest Periods); (4) Cal. Labor Code §§ 1194, 1197, and 1197.1 (Unpaid Minimum Wages); (5) Cal. Labor Code §§ 201, 202, and 203 (Final Wages Not Timely Paid); (6) Cal. Labor Code §§ 204 and 210 (Wages Not Timely Paid During Employment); (7) Cal. Labor Code § 226(a) (Failure to Provide Accurate Wage Statements); (8) Cal. Labor Code §§ 2800 and 2802 (Failure to Reimburse Necessary Business Expenses); and (9) Cal. Business & Professions Code §§ 17200, *et seq*. Complaint, *Martinez v. Sunnova Energy Corporation, et al.*, Case No. 24STCV16061 (Los Angeles Superior Court filed June 26, 2024) ("Compl.").

On July 26, 2024, Defendant removed the action to federal court on the basis of diversity jurisdiction under 28 U.S.C. §§ 1332 and 1441 et seq. *See generally*, Notice. Plaintiff now moves to remand the action back to state court, incorrectly asserting that his allegations fail to meet the $75,000 jurisdictional minimum amount in controversy. *See generally*, Motion. Before filing his Motion, counsel for Sunnova and Plaintiff met and conferred on August 9, 2024. Declaration of Christopher J. Rillo ("Rillo Decl.") ¶ 10. Sunnova's counsel sought clarity on Plaintiff's specific allegations and damages but received none. *Id.* Additionally, Plaintiff's Counsel incorrectly asserted both that Defendant could only remove the case under the Class Action Fairness Act (CAFA),

and that attorney's fees could not be considered when calculating the amount in controversy under a general diversity analysis. On September 5, 2024, counsel further corresponded and Sunnova's counsel again asked for clarification of Plaintiff's allegations concerning how "rounding" was accomplished, how meal and rest periods were interrupted, and what business expenses were not reimbursed. *Id.* ¶ 11. Plaintiff again refused to elucidate. *Id.*

Sunnova now submits its Opposition based on this Memorandum of Points and Authorities, the Declaration of Christopher J. Rillo and exhibits attached thereto, the pleadings and records filed in this action to-date, oral argument and documentary evidence as may be presented at the time of the hearing, and any other evidence the Court deems appropriate.

## III. ARGUMENT

Even given Plaintiff's inability to articulate the specific facts underlying his allegations and Defendant's resulting inability to calculate an exact numerical value for some of Plaintiff's claims, it is clear that the amount in controversy meets the jurisdictional threshold and that this Court continues to have jurisdiction over the instant action. In determining whether the jurisdictional minimum is met, the Court considers all recoverable damages, including emotional distress damages, punitive damages, statutory penalties, and attorney's fees. *Galt GIS v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998). Here, Plaintiff alleges facts supporting $52,266.12 in damages through meal and rest violations, $9,146.57 in unpaid overtime, and $21,528.85 through unpaid wage violations, and $4,000.00 on failure to provide accurate wage statements. In addition, Plaintiff alleges an indeterminate amount of damages due to violations of Cal. Labor Code §§ 2800, 2802, 1194, 1197, and 1197.1 and the California Business and Professions Code §§ 17200, *et seq*. Added to reasonably estimated attorney's fees amounting to 1/3 of Plaintiff's alleged damages, Sunnova conservatively estimates that Plaintiff has put *at minimum* $131,758.76 in controversy, but likely far more. As a result, this Court has jurisdiction over Plaintiff's claims.

### A. The "Preponderance of the Evidence" Standard Applies and is Easily Satisfied.

To remove a matter in cases of diversity, the amount in controversy must exceed, by a preponderance of the evidence, the jurisdictional minimum of $75,000. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, S. Ct. 547, 553–54 (2014); 28 U.S.C. § 1332(a). It is the removing party's burden to establish the amount in controversy; however, when a plaintiff alleges that the amount is less than the jurisdictional minimum, *and, as here,* the allegations in the complaint are ambiguous as to the amount in controversy, the removing party need show only that the amount in controversy "more likely than not" exceeds the jurisdictional minimum. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007) (citing *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996); *Jasso v. Money Market Express, Inc.*, 2012 WL 699465 (N.D. Cal., Mar. 1, 2012).

Plaintiff mischaracterizes the burden of establishing federal jurisdiction as "stringent." *See* MTR at 6:3–17. Sunnova need only to establish "that the potential damage could exceed the jurisdictional amount." *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014) (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010). Moreover, Sunnova's "burden" is not 'daunting,'" nor is it "obligated to 'research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204–05 (E.D. Cal. 2008) (citations omitted); *Cram v. Electronic Data Systs. Corp.*, 2008 WL 115438, at *2 (S.D. Cal. January 8, 2008); *Lewis*, 627 F.3d at 400 (a defendant need not prove its own liability); *Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1117 (C.D. Cal. 2010) ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint."). Instead, Sunnova may rely on reasonable assumptions to show the amount in controversy, particularly here where the Complaint lacks specific factual allegations. *Harris v. KM Indus., Inc.*, 980 F.3d 694, 701 (9th Cir. 2020) ("a defendant may rely on reasonable assumptions ... [and] need not make the plaintiff's case for it"); *LaCross v. Knight*

*Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015) (defendants can rely on "a reasonable chain of logic"). Moreover, a plaintiff cannot use a defendant's potential affirmative defenses to offset the calculation or otherwise "whittle down the amount in controversy." *Gutierrez v. Stericycle, Inc.*, 2017 WL 599412, at *15 (C.D. Cal. Feb. 14, 2017) (internal quotations omitted); *Lara v. Trimac Transp. Servs. (Western), Inc.*, 2010 WL 3119366, at *3 (C.D. Cal. Aug. 6, 2010).

Finally, a notice of removal must only "contain[ ] a short and plain statement of the grounds for removal." *Evers v. La-Z-Boy Inc.*, 2022 WL 2966301, at *4-6 (S.D. Cal. July 27, 2022). After a plaintiff moves to remand, a defendant may then submit additional facts and evidence, clarify or re-estimate the amounts in controversy, and fix "'defective' allegations of jurisdiction previously made." *Id.* (finding that defendants can submit additional facts and evidence when "appropriately responding to. . . new standards and new methods for supporting their claims at a later point in th[e] litigation."); *Dart*, 574 U.S. 81, 88–89 (2014). Sunnova's calculations in its Notice showed the amount of controversy easily surpassed the threshold. NOR ¶¶ 7–19. Yet given Plaintiff's challenge to these calculations, Sunnova now submits additional evidence, clarifies its calculations, and incorporates Plaintiff's additional claims not included in the NOR.

### B. Because Plaintiff's Allegations Put an Amount in Controversy Exceeding $75,000, this Court has Jurisdiction Over This Matter.

Where, as here, a complaint is devoid of specific facts, defendant may base its calculations on reasonable assumptions derived from the complaint's allegations. *Harris v. KM Indus., Inc.*, 980 F.3d 694, 701 (9th Cir. 2020) ("[A] defendant may rely on reasonable assumptions ... [and] need not make the plaintiff's case for it."); *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015) (finding a defendant may rely on "a reasonable chain of logic"). To determine the amount in controversy, a court should "first look to the complaint" and then use evidence to contextualize those allegations. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015);

*Roth*,799 F. Supp. 2d at 1117.

Plaintiff's Complaint explicitly alleges broad, systematic violations. It asserts that, "during the time throughout," Plaintiff's employment, Defendant's "regular" and "systematic scheme" resulted in multiple violations of mealtime, rest period, overtime, and minimum wage laws. Compl. ¶¶ 22, 24, 49. Plaintiff asserts that regularly recurring violations occurred **"daily"** and **"per shift."** *See*, *inter alia*, Plaintiff's additional allegations of broad, systemic violations: Compl. ¶¶ 1 (accusing defendant of **policy, practice, and/or procedure** of rounding down…**daily hours** worked); 21 (asserting Plaintiff "work[ed] more minutes **per shift"** than "credited"); 21 (Defendants "'rounded' down or 'shaved'" Plaintiff's "**total daily hours** worked at the time of their clock-in and clock-out…in policy and/or practice."); 22 ("Defendant engaged in an **ongoing and systematic scheme of wage abuse,**"), ("this **scheme** involved, *inter alia*, **regularly** requiring Plaintiff … to work off the clock without compensation"), ("Defendant **routinely** failed to permit Plaintiff" to take proper meal and rest periods); 22 ("**daily** hours worked"); 24 (**total daily hours** …to the benefit of Defendants, **in policy and/or practice**"); 24 ("Plaintiff…**worked more minutes per shift** than Defendants credited them with having worked."), ("**daily hours worked"**); 39 (Defendants "**regularly** failed to maintain accurate records"); 49 ("work[ing] **more minutes per shift** than Defendants credited them"); 50 ("shav[ing] Plaintiff's total daily hours worked to the nearest quarter of an hour at the clock-in and clock-out times") (emphases added).

In his instant motion, Plaintiff attempts to walk back the alleged pervasiveness of Defendant's violations, using numbers that are nowhere to be found in his Complaint. For instance, Plaintiff does not allege in his Complaint that his right to uninterrupted meal and rest periods was violated only 19% of the time. Instead, he alleges there that the violations were systematic, daily, and willful. Compl. ¶¶ 1, 21–24, 39, 49–50. Notably, the allegations asserting the ubiquitousness of Defendant's allegedly violating conduct are the most specific parts of the Complaint. The Complaint does *not* explain

how Sunnova "impeded," "disrupted" or "interrupted" Plaintiff's meal or rest periods but does allege they were violated due to "policies and/or practices" that occurred "regularly," "routinely," and "throughout the time period involved in this case." Compl. ¶ 23. The Complaint is *not* specific as to how Defendant allegedly failed to record or pay Plaintiff's minimum and overtime wages but does allege these failings occurred "daily" and "per shift." Compl. ¶ 24. When asked during meet and confer to provide specifics and enlighten Defendant about the exact amount in controversy, Plaintiff's counsel did not explain how the meal and rest periods were interrupted or how all overtime was miscalculated. Rillo Decl. ¶¶ 10, 11. Plaintiff is the "'master of [his] claim[s],' and if [he] want[s] to avoid removal," he should allege "facts specific to [his] claims which would narrow the scope of [damages] sought." *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), aff'd sub nom, *Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011) (internal citation omitted). Here Plaintiff has instead deliberately omitted facts that would otherwise aid in calculating the amount in controversy. The language in the Complaint alleging widespread violations is therefore the foremost evidence of amount in controversy.

### C. Plaintiff's Allegations of Meal and Rest Violations Conservatively Puts $52,266.12 in Controversy.

Plaintiff broadly alleges seven ways Sunnova violated his right to meal periods: when it (1) "failed to permit Plaintiff [] a reasonable opportunity to take their meal periods"; (2) "routinely failed to relieve Plaintiff [] of all duties during their meal periods"; (3) "regularly failed to relinquish control over Plaintiff [] during [his] meal periods"; (4) "impeded" upon or "interrupted" the meal breaks; (4) "did not adequately inform Plaintiff [] of [his] right to take meal periods"; (5) "require[ed] Plaintiff [] to work through [his] meal periods,"; (6) "implemented policies and/or practices which failed to provide Plaintiff [] with timely and duty-free meal periods"; and (7) "failed to maintain accurate records of meal periods taken by Plaintiff." Compl. ¶¶ 23, 25.

In his Motion, Plaintiff disingenuously tries to distance himself from these broad

allegations in his Complaint, claiming that the Court should use a 19% violation rate for meal and rest periods. MTR at 9:16–10:5. The Court should disregard Plaintiff's erroneous number and use Sunnova's proposed 100% violation rate because it is supported by both case law and Plaintiff's own allegations of uniform, systematic, regular, and daily violations.

1. The Complaint Alleges a 100% Violation Rate of Meal and Rest Period Violations.

First, Plaintiff's argument that courts cannot use a 100% violation rate without supporting evidence misstates the law. MTR at 8–9. Absent specific allegations, "courts have assumed a 100% violation rate to determine the maximum penalties." *Coleman*, 730 F. Supp. 2d at 1149; *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 391–92 (1987). Plaintiff here declined to provide any specifics narrowing the allegations in his Complaint.

Second, the Court should assume a 100% violation rate for purposes of the amount in controversy calculation because Plaintiff used explicit language to describe "daily," "per shift," "regular "routine" and "systematic" violations of mealtime, rest period, overtime, and minimum wage laws. Compl. ¶¶ 22, 24, 49. Courts in this district have regularly held identical language sufficient to "assum[e] [a] 100% violation rate is reasonable," *Alvarez v. Off. Depot, Inc.*, 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017), because they clearly are meant to describe a uniform and systematic practice of meal and rest period violations. *See also Duberry v. J. Crew Grp., Inc.*, 2015 WL 4575018, at *6 (C.D. Cal. July 28, 2015) (finding a 100% violation rate reasonable where plaintiff alleged "uniform policy and systematic scheme of wage abuse"); *Lopez v. Aerotek, Inc.*, 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015) (assuming "a 100 percent violation rate because [p]laintiff does not qualify her allegations"); *Sanchez v. Russell Sigler, Inc.*, 2015 WL 12765359, at *6 (C.D. Cal. Apr. 28, 2015) (approving a 100% violation rate "because Plaintiff's complaint allege[d] universal deprivation of meal and rest periods."); *Stevenson v. Dollar Tree Stores, Inc.*, 2011 WL 4928753, *3–

4 (E.D. Cal. 2011).

2. Plaintiff's New 19% Violation Rate in his Motion is Disingenuous and Contradicts his Complaint.

Plaintiff's proposed 19% violation rate for meal penalties and rest should also be rejected because it is inaccurate and misleading. It omits the bulk of his meal penalty allegations from the calculation. To reach his proposed 19% violation rate, Plaintiff calculated the percentage of "facial violations" of Plaintiff's timecards over the period of Plaintiff's employment. MTR at 9:23–26 (admitting that this percentage is limited to facial violations when "no meal period was recorded, the meal period was shorter than 30 minutes, or the meal period took place after the end of the fifth hour.").

However, these "facial violations" do not make up the majority of the mealtime allegations in the Complaint. Rather, Plaintiff lists at least *seven* ways that Sunnova allegedly caused meal time violations, including that Sunnova required Plaintiff to continue work duties *during* his recorded meal periods and that the *timecards themselves are incorrect*. Compl. ¶¶ 23, 25. If these types of violations occur, they would *not* be evinced by a timecard.

In fact, out of these seven allegations, only one could be evinced by the face of a timecard—the contention that Sunnova failed to permit plaintiff to take his meal breaks timely or at all. Compl. ¶ 23. Plaintiff's use of *only one* of his seven allegation as the basis for computing a blanket 19% violation rate to apply to *all* meal violations insincerely ignores the bulk of the violations he alleges. Moreover, Plaintiff also seeks damages for the claim that the *timecards themselves are incorrect*. Plaintiff cannot have his cake and eat it too—he cannot seek damages for allegedly doctored timecards while at the same time using those timecards as evidence to whittle down the amount in controversy. The Court should reject Plaintiff's erroneous calculation and instead use the reasonable 100% violation rate[3] supported by the pleadings.

[3] Some courts have utilized a violation rate of 60% where complaints allege violations stemming from "pattern and practice." *Alvarez*, 2017 WL 5952181, at *3; *Evers*, 2022

3. The Complaint Puts at least $52,266.12 in Controversy for Meal and Rest Penalties.

To calculate the amount in controversy for the meal and rest break violations with the appropriate 100% violation rate alleged in Plaintiff's Complaint, Defendant looked to California Labor Code section 226.7, which awards "the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." Plaintiff's regular rate of compensation[4] is conservatively $39.18. Rillo Decl. ¶¶ 4, 5; Plaintiff concedes that he worked roughly 667 days. MTR at 12, 8, 9, 12 (agreeing that 667 work days are reasonable for purposes of calculating amount in controversy); Rillo Decl. ¶ 7. Assuming a 100% violation rate in which a meal penalty applies to each of his workdays, the amount in controversy is $26,133.06[5].

The violation rate for rest periods is likewise 100%. Plaintiff himself concedes that "it makes logical sense to assume a similar violation rate [for rest periods as for meal penalties] in the absence of any other evidence." MTR at 10. Damages for rest period violations thus also total $26,133.06. Combined, Plaintiff's allegations for the meal and rest period claims place at least $52,266.12 in controversy.

WL 2966301, at *5. Here, Plaintiff alleges daily and per-shift violations—*far more* than a "pattern and practice." Even applying a 60% violation rate here, potential damages for break periods would be $31,359.67. Added to recovery for unpaid overtime ($ 9,146.57), wages not timely paid ($33,408.85), failure to provide accurate wage statements ($4,000.00), and 1/3 attorney's fees ($32,937.22)—the amount in controversy would still be $103,884.19.

[4] An employee's "regular rate of pay," is based off his hourly rate and, where applicable, other forms of regular compensation. *Alvarado v. Dart Container Corp. of California*, 4 Cal. 5th 542, 554 (2018); *Morgan v. Rohr, Inc.*, 2023 WL 8811816, at *11 (S.D. Cal. Dec. 20, 2023); *Bonetti v. TriStruX LLC*, 2024 WL 3225905 at *2 (N.D. Cal. June 27, 2024). Accounting for Plaintiff's change in regular rate of pay overtime, his regular rate is: 30.5 per hour from January 1, 2021–May 31, 2021, 39.5 per hour from June 1, 2022–May 2023; and 49.5 per hour from June 1, 2023 – September 8, 2023. *See* Rillo Decl. ¶¶ 4, 5. Plaintiff's pro-rata hourly wage would be, at minimum, $39.18 (Averaging 98 days at $30.50, 480 days at $39.50, 68 days at $49.50).

[5] This is calculated as 667 days * $39.18 (regular rate) = $26,133.06.

### D. Plaintiff's Allegations of Unpaid Overtime Conservatively Support a Potential Recovery of $9,146.57.

Plaintiff seeks "unpaid wages and interest thereon for unpaid wages for all hours worked at minimum wage and overtime worked at the overtime rate," alleging that Defendant employed uniform policies, practices, and/or procedures, including a timekeeping system, that resulted in Defendant failing to pay all overtime wages to Plaintiff for daily overtime hours worked. Compl. ¶¶ 1, 35, 36, 46–55, 82, 106. In its Notice, Defendant calculated $55,000 in overtime penalties, which was roughly 1.5 hours of unpaid overtime per day. NOR ¶ 17. These calculations were based on Plaintiff's broad allegations of routine, systematic, and daily violations.

In his Motion, Plaintiff contends that these numbers were too high and that Sunnova can only assume 14 minutes a day for calculating unpaid overtime. Plaintiff contends that the "thrust" of the allegation is a daily reduction of hours, the "shav[ing]" of Plaintiff's "total daily hours worked to the nearest quarter of an hour at the clock-in and clock-out times." MTR at 11:14–12:12; Compl. ¶ 21.

Plaintiff's argument is illogical considering the breadth of the allegations in his Complaint. The Complaint does *not* limit overtime claims to 14 minutes a day due to the timekeeping system, but rather generally alleges that Plaintiff is owed overtime due to Sunnova's "ongoing systematic scheme of wage abuse." Compl. ¶ 22; *see also* Compl. ¶¶ 32 (broadly alleging that "Defendant regularly failed to pay all overtime compensation owed to Plaintiff"), 33 (broadly alleging that "Defendant failed to pay overtime to Plaintiff and the Class for all overtime hours"). Moreover, in his Motion, Plaintiff admits that his overtime claims are not limited to the amount of overtime withheld due to the timekeeping system. Rather, he admits that this timekeeping system issue is merely the "thrust of the allegations" and the claims are "largely based on…Defendant's timekeeping system." MTR at 11:14–12:12. Because Plaintiff admits that the issue he takes with the timekeeping system does not encompass all of the overtime claims, he cannot limit his alleged damages only to those stemming from the

timekeeping system to avoid diversity jurisdiction.

Regardless, Plaintiff concedes, at a minimum, that it is reasonable to calculate penalties and damages for 667 work days for purposes of the amount in controversy, and it is reasonable to assume at least 14 minutes per day of unpaid overtime. MTR at 11:14–12:12; *see Dart*, 574 U.S. at 82 ("the amount in controversy allegation of a defendant seeking federal court adjudication should be accepted when not contested by the plaintiff"). Therefore, even if Sunnova limited the calculations of overtime to 14 minutes a day, Plaintiff could still allegedly recover at least $9,146.57 under this claim.

1. Plaintiff's Overtime Claims add at least $9,146.57 to the Amount in Controversy.

Adopting Plaintiff's calculation of unpaid overtime (14 minutes or .233 hours per day for the agreed-upon 667 days that he worked), the unpaid overtime claim adds $9,146.57 to the amount in controversy. Defendant calculates this amount by using Plaintiff's pro rata overtime hourly rate of $58.77[6] for each of the 667 days. In other words, Defendant calculates 58.77 * (14/60) * 667 = $9,146.57.

Additionally, Defendant believes $9,146.57 is likely an undercount because this calculation (1) is limited to the daily damages stemming from the time-keeping method that allegedly "rounded down" Plaintiff's time, (MTR at 11:4–12:12), and does not include any other form of overtime violations; and (2) does not account for the fact that the allegedly unpaid overtime could be paid out at a higher rate than 1.5, as his Earnings statements clearly show that he has been paid at "Dbl Time" rates. Ex. 2 to Rillo Decl., June 22, 2022 Earnings Statement; *see also* Compl. ¶ 46 (seeking recovery in the form of "overtime compensation at a rate of two times their regular rate of pay for all hours worked in excess of twelve (12) hours in a day and for all hours worked in excess of eight (8) hours on the seventh day of work in a workweek"). Given Plaintiff's allegations, it is certainly reasonable, if not overly conservative, to find the Overtime claims place at least $9,146.57 in controversy. Utilizing this amount, the total amount

[6] Plaintiff's overtime rate is calculated by multiplying his hourly rate of $39.18 by 1.5.

in controversy remains $131,758.76, significantly more than the jurisdictional minimum. *See* MTR 11:20–12:12.

**E. Plaintiff's Allegations of Wages Not Timely Paid Conservatively Puts $33,408.85 in Controversy.**

Plaintiff also claims he is owed wages for his missing or interrupted meal and rest periods and incorrect timekeeping over the course of his entire employment. Plaintiff seeks to recover waiting time penalties and damages for these unpaid wages under two theories: (1) Labor Code sections 201–203 (for Final Wages Not Timely Paid); and (2) sections 204 and 210 (Wages Not Timely Paid During Employment). His claim for Final Wages Not Timely Paid adds $11,880 to the amount in controversy, while his claim for Wages Not Timely Paid During Employment adds an additional $21,528.85 in controversy, for a total of $33,408.85.

1. <u>Plaintiff's Allegations of Final Wages Not Timely Paid Conservatively Adds $11,880.00 to the Amount in Controversy.</u>

The Complaint alleges that Defendant violated Labor Code sections 201–203 by failing to pay him wages owed to him at the end of his employment. Compl. ¶¶ 80–85.

Under section 203(a), "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." An employer "need only have caused and failed to remedy a single violation per employee for waiting time penalties to apply." *Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*, 2019 WL 7987117, at *6 (C.D. Cal. June 21, 2019).

To calculate the penalty amount under section 203, "an employee's rate of pay must be calculated as a daily figure [of eight-hour workdays], which can then be multiplied by the number of days of nonpayment for a maximum of 30 days." *Benitez v. Hyatt Corp.*, 2024 WL 1401712, at *5 (S.D. Cal. Mar. 21, 2024) (citing *Mamika v. Barca*, 68 Cal.App.4th 487, 494 (1998)). The employee's rate of pay is assumed to be the employee's rate on his last day of work. *Cocroft v. EQUIPMENTSHARE.COM Inc.*,

2024 WL 3877274, at *6 (S.D. Cal. Aug. 19, 2024).

Here, Plaintiff was a full-time employee whose hourly rate at the end of his employment was $49.50. *See* Ex. 3 to Rillo Decl., January 6, 2023 Earnings Statement; Rillo Decl. ¶ 4. His daily rate for section 203 penalties is therefore $396.00. ($49.50 * 8 hours). It is reasonable to assume a maximum 30-day waiting time penalty when the "vast majority (if not all) of the alleged violations . . . would have happened more than 30 days before the suit was filed, which would entitle the employees to the 30-day penalty." *Mayorga v. Evans Food Grp. Ltd.*, 2024 WL 4003514, at *3 (C.D. Cal. Aug. 30, 2024) (citing *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022)). Plaintiff filed his Complaint on June 26, 2024, over eight months after the end of his employment, making it reasonable to assume that all of the alleged violations happened more than 30 days before the suit was filed. *Id*. Plaintiff's daily rate of $396.00, multiplied by 30 days of penalties, totals $11,880.00. Thus, the claims under sections 201–203 add $11,880.00 to the amount in controversy.

2. Plaintiff's Allegations of Failure to Pay Wages Under Sections 204 and 210 Conservatively Places an Additional $21,528.85 in Controversy.

The Complaint also alleges that Defendant violated Labor Code sections 204 and 210 by "willfully" failing to pay him all wages due to him, including, *inter alia*, unpaid wages for improper meal and rest periods, and "rounded down" overtime. Compl. ¶ 90 ("[d]uring the relevant time period, Defendant intentionally and willfully failed to pay Plaintiff [] all wages due to [him], within any time period permissible under California Labor Code section 204."). The Complaint seeks the relief of all compensation owed and statutory penalties. Compl. ¶ 25.

a. It is reasonable to assume maximum penalties for Sections 204 and 210.

Section 204 requires wages to be paid "twice during each calendar month." Failure to comply results in a penalty of $100 for an initial violation and $200 for each further violation, plus 25% of the amount wrongfully withheld. Cal. Lab. Code § 210(a).

A willful violation results in a $200 penalty from the start. *Id.*

Here, Plaintiff's allegations of systematic wage abuse support using maximum penalties to calculate the amount in controversy. Even adopting Plaintiff's disingenuous calculation that meal and rest period violations occurred 19% of the time, this would average one mealtime violation and one rest period violation per week, or four per pay period. As only one violation is required per pay period to trigger the penalty, four certainly does—and the Court can assume a penalty would be due for each pay period for purposes of calculating the amount in controversy.

b. Plaintiff's claims under sections 204 and 210 for wages not timely paid during employment put an additional $21,528.85 in controversy.

There are two steps to calculating potential damages under Cal. Lab. Code § 210: (1) a penalty of $100 for an initial violation and $200 for each further violation, or a $200 penalty from the start if the violation is "willful"; added to (2) 25% of the amount wrongfully withheld.

**Step one** here amounts to $13,800. Plaintiff alleges that Defendant's failure to comply was "willful," Compl. ¶ 90; Cal. Lab. Code § 210(2), meaning a $200 penalty would apply for each paycheck violation. Plaintiff was paid biweekly and received at least 69 paychecks. Rillo Decl. ¶¶ 4, 8; NOR ¶ 10; Ex. 1 to Rillo Decl., January 22, 2021 Earnings Statement; Ex. 2 to Rillo Decl., June 22, 2022 Earnings Statement; Ex. 3 to Rillo Decl., January 6, 2023 Earnings Statement. 69 paychecks multiplied by a $200 penalty per violation totals $13,800.

**Step two** allows recovery of an additional "25 percent of the amount unlawfully withheld." Cal. Lab. Code § 210(a). Sunnova conservatively calculates Plaintiff's withheld overtime claims to be $9,146.57, (*see supra*, section III(D)); twenty-five percent of that is $2,286.64. Next, Sunnova calculates that twenty-five percent of the alleged unpaid wages due to interrupted meal and rest periods over the 667 days of

Plaintiff's employment is $5,422.21[7]. The combined amounts of allegedly withheld regular and overtime wages is $7,708.85. In sum, Plaintiff's claims for wages unpaid during employment conservatively adds an additional $21,528.85[8] to the amount in controversy.

### F. Plaintiff's Allegations of Inaccurate Wage Statements Puts $4,000.00 in Controversy.

In its Notice of Removal, Sunnova calculated the maximum $4,000 in fees for Plaintiff's claim that Sunnova violated Cal. Labor Code § 226(a) by failing to provide accurate wage statements. NOR ¶ 15. In its Motion, Plaintiff did not object to Sunnova's calculations, but argued that a statute of limitations would prevent Sunnova from recovering the maximum amount. MTR at 10:6–11:3. Plaintiff's argument is flawed because he cannot use a potential statute of limitations affirmative defense to "whittle down the amount in controversy." *Gutierrez*, 2017 WL 599412 at *15; *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 (9th Cir. 2020) (finding that "it was improper for the district court to consider [defendant's] potential statute of limitations affirmative defense in determining the amount in-controversy" because the "strength of any defenses indicates the *likelihood* of the plaintiff prevailing" and "the amount in controversy represents only the "amount at stake in the underlying litigation," not the likely liability") (additional citations omitted). Plaintiff has provided no veritable argument opposing Sunnova's calculations and here the Court should accept Sunnova's calculation of $4,000 for determining the amount in controversy.

### G. Plaintiff's Allegations Under Cal. Labor Code §§ 2800, 2802, 1194, 1197, and 1197.1 and the California UCL Also Increase the Amount in Controversy.

As Plaintiff's allegations in the Complaint clearly exceeded the jurisdictional

---

[7] The mealtime allegations imply one hour of unpaid wages every 2 days; the rest period allegations imply one hour of unpaid wages every 3 days: (39.18*667=26,133.06); Meal period wages: ($26,133.06 * 0.5 = 13,066.53); then (13,066.53 * .25 = $3,266.63); Rest period wages:(26,133.06 * (0.333)) = 8,702.30); 8,702.30 * .25 = $2,175.58. This is conservative because it assumes an hourly wage of $39.50 without considering overtime or double time rates.

[8] ($13,800 (penalties) + $2,286.64 (25% of unpaid overtime) + $5,442.21 (25% of unpaid meal and rest breaks at regular pay rate) = $21,528.85).

minimum, Defendant excluded certain claims from the calculation of alleged damages in its Notice of Removal. Given Plaintiff's instant motion, proposal of disingenuous violation rates, and refusal in meet-and-confer to provide enough factual support for exact estimates, Plaintiff's additional claims—that significantly increase the total amount in controversy—should now be included.

1. Plaintiff's Allegations Under Cal. Labor Code §§ 2800 and 2802 Increase the Amount in Controversy.

Plaintiff seeks reimbursement for business-related expenses he incurred as Defendant's employee. Cal. Lab. Code § 2802. Yet because Plaintiff's claims for unreimbursed business expenses are completely devoid of any detailed allegations (*see* Compl. ¶¶ 42–46), and because Plaintiff's Counsel informed Defendant's Counsel that he did not know of any business-related expenses, (*see* Rillo Decl. ¶¶ 10, 11), Defendants are unable to reasonably estimate[9] the amount of damages potentially stemming from this claim. Thus, in assessing the amount in controversy, the Court should consider this entire category of asserted damages that Sunnova cannot properly calculate due to Plaintiff's complete silence, prejudicing Sunnova.

2. Plaintiff's Allegations Under Cal. Business & Professions Code §§ 17200, *et seq*. Increase the Amount in Controversy.

In his Prayer for Relief, Plaintiff seeks restitution of unpaid wages, pre-judgment interest, injunctive relief, appointment of a receiver to receive, manage and distribute any and all funds disgorged, and "further relief as the court may deem just and proper." Lacking the requisite details for reasonable calculations, Sunnova does do not include these damages, even though this potential relief would increase the amount in controversy. *BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 553 (7th Cir. 2002)

---

[9] While courts can rely on assumptions to calculate the amount of reimbursement sought by plaintiffs under Cal. Labor Code § 2802, here Defendant cannot even make a reasonable assumption as Plaintiff has refused to share even the category of work expenses (e.g., phone charges, gas, etc.) that is the subject of his pleadings. *See Mayorga*, 2024 WL 4003514, at *5 (finding that, absent more specific allegations, a defendant's estimate of $10 per pay period for the use of personal cell phones at work was reasonable).

(finding that the cost to defendant of injunctive relief can be considered in the amount of controversy).

3. Plaintiff's Minimum Wage Allegations Increase the Amount in Controversy.

Plaintiff alleges Sunnova violated Labor Code § 1194(a) and failed to pay Plaintiff at the required minimum wage when it "required Plaintiff [] to perform work off the clock." Compl. ¶ 34. Plaintiff seeks "the unpaid balance of [his] minimum wage compensation as well as interest, costs, and attorneys' fees, and liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon." Compl. ¶¶ 78–79. The Complaint is unclear as to what minimum wages Plaintiff alleges are missing. Considering Plaintiff asserts unpaid hours due to alleged break violations and timekeeping issues, damages for such violations could be significant, and the breadth of these allegations should be considered in determining the amount in controversy.

**H. Plaintiff's Request for Statutory Attorney's Fees Conservatively Puts an Additional $32,937.22 in Controversy.**

By a conservative estimate, Plaintiff will seek to recover at least $32,937.22 in attorney's fees for work done on his behalf. Where a class action settlement "produces a common fund for the benefit of the entire class, courts have the discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Courts typically apply the latter method, with "25% of the fund as the 'benchmark' for a reasonable fee award." *Id*. Where this would lead to an inequitable result, courts are encouraged to either adjust the benchmark or instead apply the lodestar method. *Id*. In comparable wage and hour cases, courts routinely approve an upward departure from the 25% benchmark, awarding fees ranging from 30 to 33 percent of the fund. *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491–92 (E.D. Cal. 2010). Following these decisions, Plaintiff's counsel (Domb & Rauchwerger, LLP) requested 33% of the gross settlement award in attorney's fees in two similar class actions where they served as class counsel.

*See* Exs. 4, 5 to Rillo Decl.

The Court can reasonably assume for purposes of the amount in controversy that Plaintiff would request the same percentage of attorney's fees here. Since Plaintiffs have not provided an estimate of total damages for the purported class, the Court may use Plaintiff's alleged damages to calculate his proportional share of the attorney fee award. As shown above, Plaintiff has alleged at least $98,821.54 in compensable damages, exclusive of attorney's fees, related to Defendant's alleged violations against him individually. Multiplying this value by Plaintiff's estimate of 100 class members equals $9,882,154.00 in total damages. Thirty-tree percent of that value would be $3,293,721.93. Divided by 100 class members, $32,937.22[10] of estimated attorney's fees are attributed to Plaintiff.[11]

### I. The Overall Amount in Controversy Clearly Exceeds The Jurisdictional Minimum.

In sum, Plaintiff's allegations establish an amount in controversy well in excess of the jurisdictional minimum of $75,000. The amount in controversy is summarized as follows:

| Claim | Amount in Controversy |
| --- | --- |
| Cal. Labor Code §§ 226.7 and 512(a) (Unpaid Meal Period Premiums and Unpaid | $52,266.12[12] |

[10] Additionally, the class representative's proportion is often larger than the rest of the class when he receives an incentive. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (awarding an $10,000 incentive); *Jacobs v. Cal. State Auto. Ass'n Inter–Ins. Bureau*, 2009 WL 3562871 (N.D. Cal. Oct. 27, 2009) (awarding $7,500); *Willner v. Manpower Inc.*, 2015 WL 3863625, *8 (N.D. Cal. June 20, 2015) (awarding $7,500). Defendant is not aware of case law precluding this amount from being included in the amount of controversy, though Defendant has not included an incentive award in its conservative estimate of $131,758.76 in controversy. As Plaintiff would be the class representative, he would likely be awarded between $5,000 and $10,000 in an enhancement award, increasing the amount in controversy that is attributable to him.

[11] These calculations do not contradict *Gibson's* aggregation rule. *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 942 (9th Cir. 2001).

[12] Applying a 60% violation rate would be $31,359.67.

| | |
|---|---|
| Rest Period Premiums) | |
| Cal. Labor Code §§ 510, 1194, and 1198 (Unpaid Overtime) | $9,146.57 |
| Cal. Labor Code §§ 201, 202, and 203 (Final Wages Not Timely Paid) | $11,880.00 |
| Cal. Labor Code §§ 204 and 210 (Wages Not Timely Paid During Employment) | $21,528.85[13] |
| Cal. Labor Code § 226(a) (Failure to Provide Accurate Wage Statements) | $4,000.00 |
| **Total Before Attorney's Fees** | $98,821.54[14] |
| Attorney's Fees | $32,937.22 |
| **Total in Controversy** | $131,758.76[15] |
| Claims Not Included in Amount in Controversy | |
| Cal. Labor Code §§ 2800, 2802 (Failure to Reimburse Business Expenses) | ? |
| Cal. Labor Code §§ 1194, 1197, 1197.1 (Unpaid Minimum Wages) | ? |
| Cal. Business & Professions Code §§ 17200, *et seq.*, including injunctive relief and appointment of a receiver. | ? |

In sum, Plaintiff's claims result in an amount in controversy of $131,758.76 attributable solely to him which easily meets the requirements for this Court to exercise diversity jurisdiction. With the addition of at this point unknown potential damages for

[13] Applying a 60% violation rate to meal and rest claims would be $19,351.97.

[14] Applying a 60% violation rate to meal and rest claims results in damages of $75,738.21. This would reduce the attorneys' fees to $25,243.54 for Plaintiff and amount to $100,981.76 in controversy, well over the threshold.

[15] Adding a $7,500 class representative incentive payment would equal $40,437.22.

alleged violations of Labor Code sections 2800, 2802, 1194, 19977, and 1197.1, and Business & Professions Code sections 17200 *et seq.*, there can be no doubt that the amount in controversy exceeds $75,000. Because Plaintiff and Defendant are diverse and the amount in controversy requirement is met, Defendant respectfully requests that this Court deny Plaintiff's motion to remand.

## IV. CONCLUSION

For the foregoing reasons, Defendant has demonstrated by a preponderance of the evidence that the amount in controversy for the named Plaintiff alone exceeds $75,000. Defendant respectfully requests that the Court deny Plaintiff's requested relief and continue to properly exercise jurisdiction over this matter.

Respectfully submitted,

DATED: September 12, 2024

**BAKER BOTTS L.L.P.**

By: /s/ *Christopher J. Rillo*

Christopher J. Rillo (SBN 112009)
christopher.rillo@bakerbotts.com
Raerani Reddy (SBN 340475)
rani.reddy@bakerbotts.com
BAKER BOTTS L.L.P.
101 California Street, Suite 3200
San Francisco, California 94111
Telephone: (415) 291-6200
Facsimile: (415) 291-6300

Kevin Sadler (SBN 283765)
kevin.sadler@bakerbotts.com
BAKER BOTTS L.L.P.
1001 Page Mill Road, Suite 200
Palo Alto, CA 94304
Telephone: (650) 739-7500
Facsimile: (650) 739-7699

*Counsel for Defendant Sunnova Energy Corp.*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Sunnova Energy Corp. certifies that this brief contains 6,997 words, which complies with the word limit of L.R. 11-6.1.

DATED: September 12, 2024 By: /s/ *Christopher J. Rillo*
Christopher J. Rillo